AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>DECOREY LONDON<br><br>*Defendant(s)* | Case No.<br>25-MJ-25 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 9, 2025__ in the county of __East Baton Rouge__ in the __Middle__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 841(a)(1) | Possession with Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*signed:* Jared Tauzier
*Complainant's signature*

Jared Tauzier, Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirement of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 04/16/2025

*signed:* Erin Wilder-Doomes
*Judge's signature*

City and state: Baton Rouge, LA

Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Jared Tauzier of the United States Department of Homeland Security, Homeland Security Investigations (HSI), Baton Rouge, Louisiana, being duly sworn, depose and state that:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and empowered by law to conduct investigations and to make arrest for offenses enumerated in Section 2516 of Title 18.

2. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been so employed since February 2022. I was previously employed as a Special Agent with the United States Department of Agriculture, Office of Inspector General, New Orleans Resident Office, Food and Drug Administration, Office of Investigations, New Orleans Resident Office and United States Department of Housing and Urban Development, Office of Inspector General, Baton Rouge Field Office. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the Inspector General Investigation Training Academy, and the Homeland Security Investigations Special Agent Training Program.

3. I received specialized training at the Federal Law Enforcement Training Center related to Title 21 drug trafficking crimes and investigated offenses under said title. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their

1

controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities.

4.    As part of my duties as an HSI special agent, I have participated in investigations involving criminal enterprises, gangs, drug trafficking offenses, and firearm offenses.

5.    I am a member of the Drug Enforcement Administration Baton Rouge Task Force. I have conducted investigations of unlawful drug distribution, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of cooperating sources, and reviews of taped conversations and drug records.

6.    Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, distributed, and methods of payment for such drugs.

7.    Based on my training and experience in the investigation of drug traffickers and based upon interviews with (cooperating) defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; their use of cellular devices, computers, emails, and texts; and their use of numerical codes and code words to conduct their transactions. In my experience, drug traffickers often obtain cellular devices in fictitious names and/or the names of third parties in an effort to conceal their drug trafficking activities from law enforcement. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but

2

not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of offshore accounts.

8. I am familiar with 21 U.S.C. § 841 involving the knowing or intentional manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance. I am also familiar with 21 U.S.C. § 846 involving conspiracy to intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense controlled substances.

9. This affidavit is in support of a criminal complaint charging **Decorey LONDON** ("**LONDON**") and **Kenterrius KELLY** ("**KELLY**") with possession with intent to distribute fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

10. The statements contained in this affidavit are based on information obtained through the course of the investigation, my experience and background as a law enforcement agent, and current duties as a special agent with HSI, and information provided by other law enforcement officers, including agents and task force officers with HSI, the Drug Enforcement Administration (DEA), and detectives with the Louisville, Kentucky Metro Police Department (LMPD). Because this affidavit is being submitted for the limited purpose of seeking authorization for the issuance of a criminal complaint, I have not included each and every fact learned during the course of this investigation.

11. Based on my training and experience and the facts set forth in this affidavit, I assert that there is probable cause to believe that a violation of 21 U.S.C. § 841 has been committed by **LONDON** and **KELLY**.

3

## FACTS AND PROBABLE CAUSE

12. On April 9, 2025, a domestic parcel (hereinafter referred to as the ("**SUBJECT PACKAGE**") that weighed seven pounds arrived at the United Parcel Services (UPS) international receiving hub in Louisville, Kentucky, from UPS Store #6822 located at 3555 Rosecrans Street, San Diego, California 92110. The **SUBJECT PACKAGE** was sent by "UPS Early" shipping to a residence located within the Middle District of Louisiana located at 8146 Royalwood Drive, Baton Rouge, Louisiana 70806 (hereinafter referred to as, the ("**TARGET RESIDENCE**"). The **SUBJECT PACKAGE** was addressed to **JAMES JOHNSON** at the **TARGET RESIDENCE**.

13. Louisville Metro Police Department Detective John Stone was conducting an interdiction operation at the UPS international receiving hub in Louisville, Kentucky, and located the **SUBJECT PACKAGE** being shipped from a source region known for narcotics distribution. San Diego, California, is located seventeen miles via a direct route on Interstate 5 from the Mexico border with the United States. Based on my training and experience, the Sinaloa Cartel and the Jalisco Nueva Generación Cartel ("CJNG") are prominent cartels that operate in Southern California and are responsible for trafficking fentanyl, methamphetamine, and heroin into the United States through San Diego, California. According to open-source searches, at least 50 percent of fentanyl enters the United States via the San Diego, California border sector. A visual and physical examination of the **SUBJECT PACKAGE** revealed characteristics that through Detective Stone's experience have shown are indicative of parcels containing narcotics/dangerous drugs or narcotics proceeds.

14. The **SUBJECT PACKAGE** was shipped via "UPS Early" which is an Early A.M. next day air service and is the fastest delivery method offered by UPS. In addition, the **SUBJECT PACKAGE** label showed a shipping weight of seven pounds. Based on Detective Stone's training

and experience and my training and experience, drug traffickers often utilize next day air service to ship illegal controlled substances to limit the **SUBJECT PACKAGE**'s movement to multiple destinations prior to arriving to the final delivery destination. This methodology is utilized by drug traffickers to evade law enforcement detection and interception of packages that contain illegal controlled substances. In addition, according to UPS, a seven pound "UPS Early" package would cost approximately three hundred dollars.

15. Detective Stone presented the **SUBJECT PACKAGE** for external examination by Louisville Metro Police Detective Jacob Martion with narcotics detector K9 Forrest. K9 Forrest is routinely used to inspect for the presence of narcotics odors. K9 Forrest has been trained to detect the odor of narcotics and is currently certified to do so. He maintains an annual certification in the detection of narcotics odors and routinely trains on a weekly basis to detect the five narcotics odors of marijuana, heroin, methamphetamine, fentanyl, and cocaine. Detective Martion, Forrest's handler, advised the K9 indicated a positive alert on the **SUBJECT PACKAGE** for the odor of a controlled substance the K9 is trained to recognize.

16. On April 9, 2025, Detective Stone, submitted a Commonwealth of Kentucky search warrant to search and seize the **SUBJECT PACKAGE** that contained UPS tracking number 1Z09F3641572806152 to Jefferson County Kentucky District Court Judge Tanisha Hickerson. On the same date, Judge Hickerson approved the search warrant to search and seize the **SUBJECT PACKAGE**.

17. After seizing the **SUBJECT PACKAGE** pursuant to the search warrant, Detective Stone's search revealed two gray, three pound, IsoPure Zero Carb Protein containers, one in banana cream flavor and one in creamy vanilla flavor. The two IsoPure Zero Carb Protein containers were wrapped in bubble wrap and had a black and gray towel over the top of the containers. It appeared

5

that the actual protein powder had been removed from the two containers and replaced with a substance that contained suspected fentanyl. The total weight of the two containers was 2.24 kilograms.

18. Kentucky State Police Detective Andy Bratcher assigned to the UPS international receiving hub in Louisville, Kentucky, utilized a Mobile Detect presumptive field-testing kit to test a sample from the banana cream flavor IsoPure Zero Carb Protein container and the creamy vanilla IsoPure Zero Carb Protein container. Both Mobile Detect presumptive field-testing kits tested positive for the presence of fentanyl.

19. U.S. Customs and Border Protection Officer Corey Chaney assigned to the UPS international receiving hub in Louisville, Kentucky contacted HSI Baton Rouge regarding the **SUBJECT PACKAGE** that field tested positive for the presence of fentanyl destined for the **TARGET RESIDENCE**. The **SUBJECT PACKAGE** was forwarded to HSI Baton Rouge and is maintained in the HSI Baton Rouge evidence vault in accordance with HSI policies and procedures. I accepted the seized **SUBJECT PACKAGE** in order to attempt a controlled delivery operation.

20. I queried the **TARGET RESIDENCE** address in various law enforcement databases in an attempt to identify the occupants. Law enforcement databases show Randolph Mealey (R. Mealey), Ayana Mealey (A. Mealey) and Nigil Mealey (N. Mealey) to be potential occupants of the **TARGET RESIDENCE**.

21. Law enforcement database searches revealed that **JOHNSON** was not associated with the **TARGET RESIDENCE**. A further law enforcement databased search revealed that **JOHNSON** is a common name that revealed a large population of **JOHNSON**'s throughout the United States. Through my training and experience in narcotics trafficking, drug traffickers often

6

utilize common names as an alias consignee on packages or names not associated with the address that contain illegal controlled substances to evade law enforcement detection.

22. Furthermore, drug traffickers often utilize a fictitious consignee name on the package as well as an address or "drop location" that the drug trafficker has no association with to insulate themselves from detection by law enforcement. The drug trafficker will then retrieve the **SUBJECT PACKAGE** from the **TARGET RESIDENCE** once alerted to the **SUBJECT PACKAGE**'s arrival either through the UPS package tracking system or from someone at or associated with the **TARGET RESIDENCE**.

23. I conducted law enforcement criminal history database checks on R. Mealey, A. Mealey, and N. Mealey identified as potential occupants of the **TARGET RESIDENCE**. The law enforcement criminal history database checks did not reveal a criminal history for R. Mealey, A. Mealey, or N. Mealey.

24. The two containers in the **SUBJECT PACKAGE** were seized by HSI Baton Rouge and replaced with the exact same IsoPure Zero Carb Protein containers obtained from a GNC store. Approximately fifty-one grams of suspected fentanyl taken from the approximately 2.24 kilograms seized was double bagged and secured in a locked container within the banana cream flavor of the IsoPure Zero Carb Protein container. The creamy vanilla flavor of IsoPure Zero Carb Protein contained only legitimate protein powder in its original form.

25. On April 14, 2025, I submitted an anticipatory search warrant to Middle District of Louisiana, United States Magistrate Judge Scott D. Johnson, to search the **TARGET RESIDENCE** and seize items identified in search warrant Attachment B. On that same date, Magistrate Judge Johnson approved the anticipatory search warrant for the **TARGET**

RESIDENCE. As a result of the **SUBJECT PACKAGE** not going into the **TARGET RESIDENCE**, the approved anticipatory search warrant was not executed.

26. On April 14, 2025, an HSI undercover agent posing as a UPS delivery driver, while under law enforcement surveillance, delivered the **SUBJECT PACKAGE** to the carport area of the **TARGET RESIDENCE** and departed. Shortly thereafter, a black male wearing a black hoodie sweatshirt and shorts, later identified as **KELLY**, was observed running from the rear carport area of the neighboring residence, identified as 8134 Royalwood Drive, Baton Rouge, Louisiana 70806 (hereinafter referred to as, the "**TARGET RESIDENCE 2**") to retrieve the **SUBJECT PACKAGE** from the **TARGET RESIDENCE**. **KELLY** while under law enforcement surveillance, then carried the **TARGET PACKAGE** to the rear carport area of **TARGET RESIDENCE 2**. Another black male, later identified as **LONDON**, was observed walking across the street to retrieve a basketball before entering the front door of **TARGET RESIDENCE 2**.

27. Shortly thereafter, while under law enforcement surveillance, **KELLY** was observed jogging from the rear carport area of **TARGET RESIDENCE 2** to a gray Chevrolet truck backed into in the rear driveway next to a white Dodge Ram crew cab truck. **KELLY** briefly placed the **SUBJECT PACKAGE** into the front driver seat area of the gray Chevrolet truck and partially closed the door.

28. **LONDON** was then observed running from the rear carport area of **TARGET RESIDENCE 2** in orange shorts and no shirt with a plastic storage container in his hand. **LONDON** placed the plastic storage container into the white Dodge Ram crew cab truck and entered the driver seat. **KELLY** then retrieved the **SUBJECT PACKAGE** from the gray Chevrolet truck and placed the **SUBJECT PACKAGE** into the bed of the white Dodge Ram crew cab truck. **KELLY** then entered the front passenger seat of the white Dodge Ram crew cab truck, with

8

**LONDON** as the driver, and they departed **TARGET RESIDENCE 2** while under law enforcement surveillance.

29. The white Dodge Ram crew cab truck departed **TARGET RESIDENCE 2** bearing Louisiana license plate Z633244. A law enforcement database check revealed that the white 2020 Dodge Ram truck was registered to **LONDON**'s mother.

30. While under law enforcement surveillance, the white 2020 Dodge Ram truck, occupied by **LONDON** as the driver and **KELLY** as the passenger, traveled at a high rate of speed east on Royalwood Drive, exiting the Goodwood Homesites neighborhood, and proceeded to Airline Highway. Due to the white 2020 Dodge Ram truck traveling at a high rate of speed, the truck was briefly out of eyesight of law enforcement surveillance as the truck proceeded towards Airline Highway. **LONDON** then proceeded east on Florida Blvd. towards Sherwood Forest Blvd. before arriving to the parking lot of Harbor Freight Tools located at 1821 S. Sherwood Forest Blvd. Surveilling agents observed the white 2020 Dodge Ram truck parked in the parking lot of Harbor Freight Tools. DEA Special Agent Cornel Hubert observed **LONDON** and **KELLY** on the side of the building near the Dollar Tree.

31. Additional surveilling agents from DEA and HSI arrived and placed **LONDON** and **KELLY** under arrest. **LONDON** was verbally advised of his *Miranda* rights to which he understood. **KELLY** was verbally advised of his *Miranda* rights to which he understood. During a search of **LONDON** incident to arrest, a large amount of U.S. currency that **LONDON** advised was approximately $1800.00, and a key to the white 2020 Dodge Ram truck was located in the pocket of **LONDON**'s orange shorts. **LONDON** and **KELLY** were transported to Louisiana State Police (LSP) Headquarters for processing.

9

32. During a protective sweep of the 2020 white Dodge Ram truck, investigating agents located two IsoPure Zero Carb Protein containers one in the banana cream flavor and one in the creamy vanilla flavor located in the open bed of the truck. The GPS tracker and locked container that contained approximately fifty-one grams of suspected fentanyl were recovered inside the banana cream flavor IsoPure Zero Carb Protein container.

33. A protective sweep of the interior of the truck, revealed in plain view, a large plastic open container on the front passenger floorboard of an unknown powder substance that matched the description of the container that **LONDON** was observed placing inside the truck prior to departing **TARGET RESIDENCE 2**. **LONDON** subsequently advised agents that the contents of the large plastic open container were the same as what was being shipped from California. Additionally, an Anderson manufacturing multi-caliber model AM-15 firearm bearing serial number 23000256 with a loaded extended magazine was observed in plain view on the driver side rear passenger floor.

34. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on or about April 14, 2025, **LONDON** and **KELLY**, possessed with intent to distribute fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

_____
Jared Tauzier, Special Agent
Homeland Security Investigations

Affidavit submitted by email/pdf. and attested to me as true and accurate by telephone consistent with Federal Rule of Criminal Procedure 4.1 on this <u>16th</u> day of April 2025.

*[Signature: Erin Wilder-Doomes]*

ERIN WILDER-DOOMES, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

11